■ HAROLD SIMON, Respondent-Appellant, *v.* ELECTROSPACE CORPORATION, Appellant-Respondent, et al., Defendants.— Judgment entered September 11, 1969, herein appealed from, unanimously reversed on the law, without costs and without disbursements, the judgment vacated, and the matter remanded to Mr. Justice HELMAN for taking of further testimony and findings as to the value of the stock in question. A majority of this court is in accord with the determination that such stock, if issued to plaintiff, would necessarily have been restricted and could only have been held for a period of time as investment stock. The testimony of defendant's expert was that such stock would have had a value of $10 per share. His reasons for so concluding were set forth fully and at length. The court, in rejecting this figure, used a " discount value of one

third for the restricted shares by averaging the discount rate between the suggested estimate of 19 to 53% ", and made an award in accordance therewith. The court used a value of $34.75 per share, the unrestricted price at which the stock allegedly was selling at the time of trial. It then estimated the total value of the shares to which the court found plaintiff entitled, and deducted one third from such total. The resulting sum was the award given. We find no support in the record for such method of calculation. The testimony was that the value of the stock, if restricted, was $10 per share. The discount figures above referred to were based on transactions in which the issuer undertook to register the stock within a fixed time. Here there apparently was not an agreement or requirement for registration within any amount of time. Accordingly, the average period of time, required to obtain a "no action" letter, if ascertained, would seem to apply. Some of us agree with the trial court that setting the value as of the time of trial rather than the date when the breach occurred does permit of a windfall to the plaintiff. However, in light of the earlier determination of this court (32 A D 2d 62) we are constrained to abide by such direction and therefore make the foregoing disposition. Concur — Stevens, P. J., Nunez, Tilzer and Macken, JJ.; McGivern, J., concurs in the following memorandum: Although I assent to a remand of this matter for a further hearing in respect of damages, I could as readily affirm. The defendants herein have been found by both the trial court and by a majority of this court to have been the malefactors, answerable in damages. As such "'every doubt and difficulty should be resolved against them.'" (*Michel Cosmetics* v. *Tsirkas,* 282 N. Y. 195, 203; *Bruno* v. *Friedberg,* 21 A D 2d 336, 340.) And from the disposition of this court, the defendants sought to take no appeal. Nor did they seek reargument. A perusal of the record below indicates that the defendants made no effort to rebut the plaintiff's position that there was nothing in the agreement requiring the plaintiff to take restricted stock. The others got unrestricted stock and participated in the aggrandizement of its value, to which, prima facie, the plaintiff is also entitled. And there is nothing to suggest plaintiff's fee could not have been carved out of the unrestricted stock issued to the stockholders of the merged corporation, if the defendants had acted appropriately. The defendants, who left the plaintiff out in the cold, had an opportunity to develop contrary evidence. Instead, said the defendants' attorney, "the testimony that I offered was in * * * for better or for worse". He also said, "I once again stand on this record. I don't think this court has a right to impose upon us the burden of retaining additional experts at our cost and expense to clarify the court's thinking on this thing. We are prepared to stand on this record and do." Thus, although I concur in the action of the majority, in view of the almost intransigent attitude of the defendants, I would feel no hesitancy in affirming the present judgment as within the permissible range of evidence. There must be an end to litigation. Furthermore, I find nothing in the record of any probative value, to support the majority's conclusion that the value of the restricted stock was $10 per share at the time of trial — assuming that the value of restricted stock constituted the proper measure of damages, which I dispute.